UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
MAHAMADOU SYLLA,

                    Plaintiff,                                      **MEMORANDUM AND ORDER**

          v.                                                        18-CV-6524 (RPK) (MMH)

NEW YORK CITY DEPARTMENT OF
EDUCATION; NEW YORK CITY SCHOOL
SUPPORT SERVICES, INC.; WILLIAM
QUINTANA; and ROBERT PAUL,

                    Defendants.
-------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

          Plaintiff Mahamadou Sylla, an African-American Muslim originally from Mali, worked as

a custodian in schools operated by the New York City Department of Education ("DOE") for about

eight years.  Pl.'s Resp. to Defs.' Local Civil Rule 56.1 Statement ¶¶ 1–6 (Dkt. #76-1) ("Rule 56.1

Resp.").  He alleges that during his time there, a co-worker repeatedly called him "mono"—

Spanish for monkey.  Plaintiff's career with the DOE ended after he threw a pear toward a student.

          Plaintiff then filed this lawsuit.  He alleges he was subjected to a hostile work environment,

retaliation, and unlawful termination, all based on his race, national origin, and religion, in

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*  He further alleges

that he suffered discrimination based on race in violation of 42 U.S.C. §§ 1981 and 1983, again in

the form of a hostile work environment, retaliation, and unlawful termination.  Defendants have

moved for summary judgment.  For the reasons explained below, defendants' motion is denied as

to plaintiff's claim that race- and national origin-based harassment created a hostile work

environment in violation of Title VII.  The motion is granted as to the rest of plaintiff's claims.

## BACKGROUND

Plaintiff worked as a custodian in DOE schools from 2008 until November 2016.  Rule 56.1 Resp. ¶ 1.  Initially, the DOE directly employed plaintiff.  Rule 56.1 Resp. ¶ 13.  From August 2016, plaintiff's nominal employer became the New York City School Support Services, Inc. ("NYCSSS"), a corporation formed for the purpose of providing custodial helpers to the DOE.  *Id.* ¶¶ 13–14, 60–62; Pl.'s Reply in Opp'n to Defs.' Mot. for Summ. J. Ex. 10 (Dkt. #76-13).  Plaintiff was continuously employed in this custodial role until his 2016 termination, *see* Rule 56.1 Resp. ¶¶ 1, 49, except for a nine-month period from January 2009 through October 2009 when plaintiff was in the custody of immigration authorities, *id.* ¶ 9; Defs.' Mot. for Summ. J. Ex. A 156 (Dkt. #75-4) ("Sylla Depo.").  According to plaintiff, his then-supervisor, Kevin Burke, initially welcomed plaintiff back to his prior role when he first returned from that immigration detention, but Burke's staff later reduced plaintiff's compensation based on his loss of seniority from this detention.  Pls.' Local Rule 56.1 Supp. ¶ 11 (Dkt. #76-2) ("Rule 56.1 Supp.").

Between 2010 through 2016, during vacation periods but not the regular school year, plaintiff would work with Silvio Martinez, a DOE handyman.  Sylla Depo. 132.  According to plaintiff, every time that he worked with Martinez, Martinez would address him as "mono," meaning monkey.  *Id.* 131–32.  Plaintiff further alleges that on March 29, 2010—one of the days on which Martinez called him "mono"—plaintiff found a banana peel in his mop bucket.  Rule 56.1 Resp. ¶ 6.  Plaintiff believes that Martinez placed the banana peel there.  *Ibid*.

According to plaintiff, he told then-supervisor Burke of these incidents on April 21, 2010, and Burke told plaintiff to avoid Martinez, but did not report plaintiff's complaint to the DOE's Office of Equal Opportunity ("OEO").  Defs.' Mot. for Summ. J. Ex. W. 1–3 (Dkt. #75-26) ("2010 OEO Report").  On May 10, 2010, plaintiff himself filed a complaint with the OEO, alleging that

Martinez had harassed him by calling him "mono" and placing a banana peel in his mop bucket. *Ibid*. The OEO investigated. *Ibid*. It interviewed plaintiff, Martinez, Burke, and an individual whom plaintiff had identified as being present on one of the occasions when Martinez called him "mono." *Id*. 2–4. That witness denied having heard Martinez call plaintiff "mono." *Ibid*. The OEO found insufficient evidence to substantiate plaintiff's allegations, citing Martinez's denial and the absence of any corroborating witness. *Id*. 3–4. But it found Burke had violated DOE rules by failing to report plaintiff's complaint to the OEO, and determined that it would "consult with Mr. Burke's supervisor . . . regarding appropriate corrective/disciplinary action." *Ibid*. After the OEO complaint, according to plaintiff, "Martinez [continued] calling [him] monkey for years" when they worked together. Sylla Depo. 163.

In October 2016, plaintiff complained to his Union, the Local 32BJ of the Service Employees International Union, about another occasion when Martinez had called plaintiff "mono." Rule 56.1 Supp. ¶ 14; Sylla Depo. 163; *see* Rule 56.1 Resp. ¶ 62. According to plaintiff, a Union representative contacted the school about the conduct, and Martinez apologized to plaintiff that same day. Rule 56.1 Supp. ¶ 14; Sylla Depo. 163–64.

By 2011, Robert Paul had replaced Burke as the custodian engineer who supervised plaintiff. Rule 56.1 Resp. ¶ 4. According to plaintiff, on June 10, 2011, Paul reduced plaintiff's work schedule from eight hours per day to six hours, citing "budget cuts." Pl.'s Reply in Opp'n to Defs.' Mot. for Summ. J. Ex. 23 1 (Dkt. #76-26). This schedule reduction was reversed after plaintiff complained to his Union. Rule 56.1 Supp. ¶ 12.

Plaintiff also alleges that in 2015, Paul made disapproving statements about Muslims. For example, Paul stated that "there were too many Muslims" and that Muslims "prayed too much." Sylla Depo. 113–14. In addition, he and the other Muslim coworker were referred to by their last

names while other employees were referred to by their first names.  Mot. for Summ. J. Ex. Z 65–67 (Dkt. #75-29) ("Paul Depo.").

According to plaintiff, Paul also told plaintiff in 2015 that plaintiff and the other Muslim coworker could not go to pray at the Mosque.  Rule 56.1 Supp. ¶ 18.  While Paul then relented, he required plaintiff and his Muslim coworker to "punch-out" to do so, even though Paul did not require non-Muslim employees to punch-out for other breaks.  *Ibid.*; Sylla Depo. 118–20.  Plaintiff reported Paul to the Union, which reminded Paul that all breaks must be "punched-out."  Sylla Depo. 118–20.  According to plaintiff, Paul continued to selectively enforce the punch-out rule afterward.  *Id*. 119.

Plaintiff also objects to Paul's having denied plaintiff's request to take off several weeks for vacation from September 14, 2015, through October 3, 2015.  Plaintiff wanted the time off for the Hajj, "a pilgrimage Muslims have to do once in a lifetime," but Paul denied the request because a more senior employee had requested vacation over the same dates, Sylla Depo. 112, and instead scheduled plaintiff for vacation during the summer, Rule 56.1 Supp. ¶ 24; Pl.'s Reply in Opp'n to Defs.' Mot. for Summ. J. Ex. 29 1 (Dkt. #76-32).  Plaintiff filed a grievance with his Union.  Rule 56.1 Supp. ¶ 25.  The NYCSSS eventually agreed "that . . . plaintiff [could] make the Hajj," but plaintiff responded that it was too late for him to do so in 2015 as he initially requested.  *Id*. ¶¶ 25, 28.  It was agreed that plaintiff could take vacation to make the Hajj the following year.  *Ibid*.

During the time plaintiff worked for Paul, Paul issued plaintiff several warning notices.  Rule 56.1 Resp. ¶ 25.  In April 2011, Paul gave plaintiff a written and verbal notice that, absent permission, he was not allowed to work from 2:00 p.m. to 11:00 p.m. instead of his scheduled hours, 3:00 p.m. to 12:00 a.m.  Mot. for Summ. J. Ex. D (Dkt. #75-7) 1; Rule 56.1 Resp. ¶ 26.  In addition, Paul threatened to fire plaintiff in late July 2014 after plaintiff did not answer the door

4

on his lunch break to accept a delivery at the school building.  Rule 56.1 Supp. ¶¶ 38–39; Pl.'s Reply in Opp'n to Defs.' Mot. for Summ. J. Ex. 54 1 (Dkt. #76-57).  In July 2015, Paul gave plaintiff a written and verbal notice that plaintiff had failed to notify Paul that he would not be working on July 17, 2015.  Mot. for Summ. J. Ex. E (Dkt. #75-8) 1; Rule 56.1 Resp. ¶ 27.  Plaintiff alleges that he and a coworker did in fact tell Paul that they would both be absent because of an Islamic holiday.  Rule 56.1 Resp. ¶ 27.  Paul gave plaintiff his third warning for insubordination, on July 31, 2015, on the ground that when Paul discussed the prior warning with plaintiff, plaintiff walked out of Paul's office after telling Paul, "you want to play games."  *Id*. ¶ 28; Mot. for Summ. J. Ex. F 1 (Dkt. #75-9).

On August 25, 2015, plaintiff asked to be moved from the night shift to the day shift.  Rule 56.1 Resp. ¶ 21.  Paul initially denied his request.  *Id*. ¶¶ 22–23.  Plaintiff asserts Paul told plaintiff he was "not going to get it" and that Paul hired two new people for the day shift prior to approving plaintiff's request.  Sylla Depo. 42; Rule 56.1 Supp. ¶¶ 32–37.  On December 10, 2015, plaintiff filed a second complaint with the DOE OEO alleging that "Paul has harassed and denied him several promotional opportunities despite being qualified and/or having the requisite seniority" and that "Paul has promoted less qualified/senior people over him and also has denied him reasonable vacation requests."  Pl.'s Reply in Opp'n to Defs.' Mot. for Summ. J. Ex. 41 1 (Dkt. #76-44); Rule 56.1 Resp. ¶¶ 72–73.

On April 13, 2016, Paul granted plaintiff's request to be moved to the day shift.  Pl.'s Reply in Opp'n to Defs.' Mot. for Summ. J. Ex. 38 1 (Dkt. #76-41).

On November 4, 2016, plaintiff threw a pear in the direction of a student, in an incident captured on video, and was fired that same day.  Rule 56.1 Resp. ¶¶ 29, 49.  The video shows plaintiff sweeping a hallway, when a pear rolls in front of plaintiff's broom.  Pl.'s Reply in Opp'n

to Defs.' Mot. for Summ. J. Ex. 57 00:06–00:26 (Dkt. #76-60) ("Video"); Rule 56.1 Resp. ¶ 36. According to plaintiff, the pear had been thrown by a student.  Rule 56.1 Resp. ¶ 40.  On the video, plaintiff picks up the pear and moves across the hall, and then throws the pear in the direction of in-frame and out-of-frame students.  Video 00:26–00:35; Rule 56.1 Resp. ¶¶ 31, 37.  The parties agree that plaintiff threw the pear, Rule 56.1 Resp. ¶¶ 38–39, and the video recording of the incident shows that there were students in the approximate direction of where plaintiff threw the pear, Video 00:26–00:35.  Plaintiff disputes defendants' assertion that a student was actually hit by the pear, Rule 56.1 Resp. ¶ 44, and the video does not resolve this dispute because it does not show where the pear lands, Video 00:26–00:35.

Sarah Lenihan, a teacher present for the pear-throwing incident, reported it to principal William Quintana—the principal of the Bronx High School for Medical Science at Taft where the pear-throwing occurred.  Rule 56.1 Resp. ¶¶ 45–46; *see* Rule 56.1 Supp. ¶ 2.  Principal Quintana told Lenihan to contact the DOE's Office of Special Investigations and report the incident as "an alleged corporal punishment violation," and to collect statements from the "alleged victim and any potential witness."  Rule 56.1 Resp. ¶ 47; Pl.'s Reply in Opp'n to Defs.' Mot. for Summ. J. Ex. 62 1 (Dkt. #76-65).

"After discussion among leadership from School Facilities, [plaintiff's Union], and Principal Quintana," Pl.'s Reply in Opp'n to Defs.' Mot. for Summ. J. Ex. 56 3 (Dkt. #76-59), plaintiff was fired that same day by letter, effective immediately, Rule 56.1 Supp. ¶ 56.  The letter stated that plaintiff's employment was being terminated because plaintiff "had an altercation with a student" that involved plaintiff throwing "a piece of fruit at this student."  Rule 56.1 Resp. ¶¶ 49– 50; Defs.' Mot. for Summ. J. Ex. J 1 (Dkt. #75-13) ("Termination Letter").  Plaintiff's termination letter was signed in the name of Paul, his supervisor.  Termination Letter 1.  But Paul was on

vacation at the time of the incident and retired without ever returning to work, and he does not recall any involvement with plaintiff's termination. Paul Depo. 58–60; Mot. for Summ. J. Ex. R 1 (Dkt. #75-21). The termination letter was instead executed by Paul's assistant Maribel Villamizar, Termination Letter 1, at the direction of the facilities department's leadership, Pl.'s Reply in Opp'n to Defs.' Mot. for Summ. J. Ex. 56 3 (Dkt. #76-59); Paul Depo. 57–59; Sylla Depo. 93–94.

The DOE conducted an investigation of the incident, in which it collected written statements from Lenihan and three students, including the student allegedly hit with the pear. Rule 56.1 Resp. ¶¶ 53–58. The DOE's Division of School Facilities issued a memorandum noting that Lenihan saw plaintiff throw a pear back at a student who had thrown a pear at him. Mot. for Summ. J. Ex. R 1 (Dkt. #75-21).

Plaintiff filed a grievance with his Union protesting his termination, but the Union decided not to pursue the grievance because it "determined that it lack sufficient merit for the Union to be likely to prevail in arbitration." Rule 56.1 Resp. ¶¶ 62–64.

On August 25, 2017, plaintiff filed a complaint with the New York State Division of Human Rights ("SDHR"), cross-filed with the federal Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of race, religion, and national origin, as well as retaliation. Mot. for Summ. J. Ex. U 1–10 (Dkt. #75-24) ("SDHR Compl."); Rule 56.1 Resp. ¶¶ 65–66, 68. On February 29, 2018, the SDHR concluded there was no probable cause to believe that discrimination or retaliation occurred. Mot. for Summ. J. Ex. V 1–2 (Dkt. #75-25); Rule 56.1 Resp. ¶ 67. The EEOC adopted the SDHR's findings, and plaintiff received an EEOC right-to-sue letter on August 15, 2018. Second Am. Compl. Ex. A. (Dkt. #35-1) 1.

Plaintiff filed this lawsuit on November 8, 2018.  Comp. (Dkt. #1).  He filed an amended complaint on May 21, 2019, First Am. Comp. (Dkt. #14), and the operative second amended complaint on October 28, 2019, Second Am. Comp. (Dkt. #35).

The second amended complaint asserts hostile-work-environment, unlawful-termination, and retaliation claims under Title VII against the DOE and NYCSSS.  Second Am. Compl. ¶¶ 96–99, 104–107.  It also asserts hostile-work-environment, unlawful-termination, and retaliation claims under Section 1981, via Section 1983, against all defendants.  *Id.* ¶¶ 100–103, 108–111.

Defendants move for summary judgment on all claims.  Defs.' Mot. for Summ. J. (Dkt. #75) ("Defs.' MSJ").

## STANDARD OF REVIEW

The facts in this opinion are taken from the parties' exhibits, including unambiguous video footage where available, *Scott v. Harris*, 550 U.S. 372, 380–81 (2007); *Pratt v. Nat'l R.R. Passenger Corp.*, 709 F. App'x 33, 34 (2d Cir. 2017), and plaintiff's responses to defendants' statement of facts filed in accordance with Local Rule 56.1.  Local Rule 56.1 "deems admitted each numbered paragraph in [a] statement of material facts" that is not specifically controverted in an opposing Local Rule 56.1 statement, *Freistat v. Gasperetti*, No. 17-CV-5870 (RPK) (LB), 2021 WL 4463218, at *1 (E.D.N.Y. Sept. 29, 2021) (citing Local Rule 56.1), but "the Court will not consider assertions for which no citations to record are provided . . . that are merely legal arguments, . . . or [that are] directly contradicted by or not patent from evidence in the record," *Sanders v. City of New York*, No. 16-CV-6526 (CBA) (SJB), 2021 WL 4395219, at *3 n.8 (E.D.N.Y. June 15, 2021) (collecting cases), *report and recommendation adopted*, 2021 WL 4350487 (E.D.N.Y. Sept. 24, 2021).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). "A fact is material if it might affect the outcome of the suit under governing law." *Ibid*. The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether there is a genuine issue of material fact, a court evaluates the whole record, resolving all ambiguities and drawing all permissible factual inferences in favor of the non-movant. *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010). "It is a settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quotation marks, alterations, and citation omitted). A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

## DISCUSSION

Defendants' motion for summary judgment is denied as to plaintiff's Title VII claim against the DOE and NYCSSS of a hostile work environment connected to plaintiff's race and national origin. The motion is granted as to plaintiff's remaining Title VII claims and his claims under Section 1981, via Section 1983.

I.      **Title VII: Only Plaintiff's Race- And National Origin-Based Hostile-Work-Environment Claim May Proceed.**

Defendants' motion for summary judgment on plaintiff's Title VII claims is granted in part and denied in part.  Plaintiff may proceed on his claim that he suffered a hostile work environment due to harassment based on race and national origin.  But the DOE and NYCSSS are entitled to summary judgment on plaintiff's Title VII claim based on unlawful termination, as well as plaintiff's untimely Title VII claims of religious discrimination and retaliation connected to acts other than plaintiff's termination.

   A.   **Defendants' Motion For Summary Judgment On Plaintiff's Claim Of A Hostile Work Environment Due To Harassment Based On Race And National Origin Is Denied.**

Plaintiff timely exhausted a Title VII claim that he suffered a hostile work environment due to harassment based on race and national origin, and material disputes of fact preclude summary judgment on that claim.

          i.   **Plaintiff Timely Exhausted His Claim That He Suffered A Hostile Work Environment Based On Race And National Origin.**

Plaintiff timely exhausted his claim that he suffered a hostile work due to harassment based on his race and national origin.  Under Title VII, an employee in a state like New York "that has an entity with the authority to grant or seek relief with respect to [an] alleged unlawful practice" must file an employment discrimination charge with the EEOC no more than 300 days after the alleged unlawful employment practice, giving notice of plaintiff's Title VII claims.  *Richardson v. Hartford Pub. Libr.*, 404 F. App'x 516, 517 (2d Cir. 2010) (citing 42 U.S.C. § 2000e–5(e)(1)); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109, (2002); *see Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 204 (E.D.N.Y. 2014).  "A [Title VII] claim is time barred if it is not [included in an EEOC charge] filed within these limits." *Richardson*, 404 F. App'x at 517 (citing *Morgan*, 536 U.S. at 109).

On August 25, 2017, plaintiff filed a charge with the SDHR, which was cross-filed with the EEOC, alleging an "unlawful discriminatory practice relating to [the DOE's] employment" based on race and national origin, among other protected characteristics, and alleging that Martinez engaged in racial harassment from 2010 to 2016.  SDHR Compl. 2–7.  This administrative charge adequately gave notice of plaintiff's Title VII hostile-work-environment claim based on race and national origin.

Defendants challenge the adequacy of that charge because it did not explicitly invoke the concept of a hostile work environment.  Defs.' Mem. of Law in Supp. of Mot. for Summ. Judgment 7–9 (Dkt. #75-3) ("Defs.' Mem. in Supp.").  But an EEOC charge need not use magic words to give notice of a Title VII claim; instead, a charge is adequate to exhaust a hostile-work-environment claim if such a claim is "reasonably related to those [claims presented in the charge that was] filed with the agency."  *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (citation omitted).  "A claim is considered reasonably related if the conduct complained of would fall within the scope of the [agency] investigation which can reasonably be expected to grow out of the charge that was made."  *Ibid.* (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359–60 (2d Cir. 2001)).  This "fact-intensive" inquiry focuses on whether "the substance of the charge" gave the agency "adequate notice to investigate discrimination on" the unalleged but reasonably related charge.  *Mathirampuzha v. Potter*, 548 F.3d 70, 76 (2d Cir. 2008).

Here, plaintiff's Title VII claim of a hostile work environment is based on the racial harassment by Martinez that plaintiff described in his administrative charge.  Second Am. Compl. ¶ 97; SDHR Compl. 2–7.  Accordingly, an investigation into the facts underlying that charge required inquiry into "the same facts [that would be] necessary" to bring a Title VII hostile-work-environment claim.  *Atencio v. U.S. Postal Serv.*, No. 1:14-CV-7929 (GHW), 2015 WL 7308664,

at *7 (S.D.N.Y. Nov. 19, 2015) (citing *Montanez v. City of New York*, No. 09-CV-5652 (SJ) (SMG), 2012 WL 2374205, at *2 (E.D.N.Y. June 22, 2012)). Plaintiff's hostile-work-environment claim under Title VII is therefore reasonably related to the allegations in the agency charge. *See, e.g.*, *Lee v. Saul*, No. 19-CV-06553 (PGG) (SN), 2022 WL 1051216, at *4 (S.D.N.Y. Feb. 10, 2022).

Moreover, taking the evidence in the light most favorable to plaintiff, his Title VII claim based on a hostile work environment is timely because at least one act in furtherance of that environment allegedly occurred within 300 days prior to the charge's filing. Plaintiff stated in his deposition that Martinez called him "mono"—which plaintiff understood as a slur relating to his race, Sylla Depo. 133–34—"in October [2016], . . . a couple of days before [he] got fired" on November 4, 2016, *id*. 132. Based on that testimony, a factfinder could determine that Martinez referred to plaintiff using a racially offensive slur on or after October 29, 2016—within 300 days before plaintiff filed his administrative charge on August 25, 2017.

Moreover, under the continuing violations doctrine, this alleged use of a racial slur in the 300 days before the charge's filing permits plaintiff to press a hostile-environment claim based on Martinez's alleged racial slurs over the entire course of plaintiff's employment. The continuing violations doctrine permits a court to consider "'the entire scope of . . . [the] claim, including behavior alleged outside the statutory time period,'" in adjudicating a Title VII claim, so long as "an act contributing to that hostile environment takes place within the statutory time period." *Morgan*, 536 U.S. at 105.

To be considered, untimely acts must be "part of the same actionable hostile work environment practice" as the timely act. *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) (quoting *Morgan*, 536 U.S. at 115). This turns on whether the timely and untimely

actions are "sufficiently similar in kind." *Richard v. New York City Dep't of Educ.*, No. 16-CV-957 (MKB), 2017 WL 1232498, at *14 (E.D.N.Y. Mar. 31, 2017) (citing *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 203 (2d Cir. 2014)).  Martinez's entire course of alleged harassment of plaintiff based on his race and national origin—slurs and the related act of allegedly putting a banana peel in plaintiff's mop bucket—is similar in kind to the racial slur by Martinez alleged to have occurred within the 300 days before the charge was filed.  *See, e.g.*, *James v. Van Blarcum*, 782 F. App'x 83, 85 (2d Cir. 2019) (allegations sufficiently related where time-barred and timely acts involved "same or similar" derogatory comments about plaintiff's race); *Berrie v. Bd. of Educ. of Port Chester-Rye Union Free Sch. Dist.*, No. 14-CV-6416 (CS), 2017 WL 2374363, at *10 (S.D.N.Y. May 31, 2017) (finding sufficient relatedness between timely and untimely acts when the acts were all based on racial discrimination, occurred five times over three years, and were "arguably perpetrated by the same few actors"), *aff'd*, 750 F. App'x 41 (2d Cir. 2018). Accordingly, considering the facts in the light most favorable to plaintiff, plaintiff's hostile-work-environment claim based on all of Martinez's conduct is timely.

### ii.  Disputes Of Fact Preclude Summary Judgment On This Claim.

Defendants' motion for summary judgment is denied as to plaintiff's race- and national origin-based hostile-work-environment claim under Title VII because plaintiff identifies material disputes of fact regarding this claim.  "An employer violates Title VII when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment so long as there is a basis for imputing the conduct that created the hostile environment to the employer." *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 387 (2d Cir. 2020) (citations, ellipses, and quotation marks omitted); *see Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009).

Defendants have sought summary judgment on the theory that Martinez's conduct was not sufficiently severe or pervasive to create a hostile work environment, but they have not argued that the conduct of Martinez, a co-worker, was not properly imputed to defendants. *Cf. Duch*, 588 F.3d at 762 (explaining that whether harassment of a co-worker is attributable to employer depends on whether the employer "knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action" or if the employer "failed to provide a reasonable avenue for complaint"). Accordingly, I address only the summary-judgment argument regarding severity and pervasiveness that defendants have raised. *See, e.g.*, *Mexico Infrastructure Fin., LLC v. Corp. of Hamilton*, No. 17-CV-6424 (VSB), 2020 WL 5646107, at *3 (S.D.N.Y. Sept. 21, 2020) (explaining that courts consider only arguments for summary judgment that a movant makes in its initial brief) (collecting cases); *Doe v. City of New York*, No. 15-CV-117 (AJN), 2018 WL 6095847, at *8 (S.D.N.Y. Nov. 21, 2018) (same).

Material disputes of fact preclude a grant of summary judgment based on defendants' theory that Martinez's conduct was not sufficiently severe or pervasive to create a hostile work environment. A plaintiff may establish actionable harassment by "demonstrat[ing] either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [his] working environment." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000) (citation and quotation marks omitted). "[W]hether racial slurs constitute a hostile work environment typically depends upon the quantity, frequency, and severity of those slurs, . . . considered cumulatively in order to obtain a realistic view of the work environment." *Schwapp v. Town of Avon,* 118 F.3d 106, 111 (2d Cir. 1997) (citations and quotation marks omitted). As a general matter, "[f]or racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents

14

of racial enmity." *Ibid*. (citation and quotation marks omitted).  In other words, typically, "instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments" to alter the conditions of plaintiff's employment.  *Ibid.* (citation and quotation marks omitted); *see Whidbee*, 223 F.3d at 69 (stating that offensive language "may fail to demonstrate a hostile environment" if the "[i]ncidents . . . are 'few in number' and . . . occur[red] 'over a short period of time'") (citation omitted).

Viewing the record in the light most favorable to plaintiff, as required at the summary judgment stage, a factfinder could determine that Martinez subjected plaintiff to consistent racial harassment over the course of seven years by regularly calling plaintiff "mono" and, on one occasion, placing a banana peel in plaintiff's mop pail.  Plaintiff stated that the verbal abuse he suffered was frequent—albeit in testimony that is somewhat general—by stating Martinez's verbal abuse occurred every time that plaintiff worked with Martinez from 2009 through 2016, and describing the regularity as "all the time."  Sylla Depo. 132–34.  To be sure, plaintiff has made other statements that call the pervasiveness of this abuse into some question.  Plaintiff acknowledged that he worked with Martinez only during school-vacation periods and not during the regular school year, for example.  *Id*. 131–32.  But a jury crediting plaintiff's description of the frequency of the alleged abuse could find that Martinez subjected plaintiff to persistent racist name-calling.  *See Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 119–20 (2d Cir. 2010) (noting decision holding that a jury could "find pervasive harassment" by crediting a plaintiff's "general allegations of constant abuse . . . even in the absence of specific details about each incident" and stating that "a plaintiff, to prevail, need not recount each and every instance of abuse to show pervasiveness") (citation and quotations marks omitted).

Based on this pervasiveness, a jury could further conclude that even if "each incident on its own may not have been particularly severe," Martinez's use of racial slurs was frequent enough to "alter the working conditions of a reasonable employee." *Terry v. Ashcroft*, 336 F.3d 128, 149 (2d Cir. 2003) (citation and quotation marks omitted); *see, e.g.*, *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 439 (2d Cir. 1999) (finding summary judgment inappropriate in a case involving at least seven instances of derogatory racial comments by coworkers and supervisors over three and a half years of employment), *overruled on other grounds by Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Schwapp v. Town of Avon*, 118 F.3d 106, 112 (2d Cir. 1997) (finding summary judgment inappropriate in case involving twelve incidents of alleged racial harassment, only some of which occurred during plaintiff's employment); *Lumhoo v. Home Depot USA, Inc.*, 229 F. Supp. 2d 121, 154–56 (E.D.N.Y. 2002) (denying defendant summary judgment against an African American plaintiff's hostile-work-environment claim when racial slurs were commonly used in the workplace).

Because defendants fail to establish that no reasonable jury could find Martinez's use of racial slurs altered the conditions of plaintiff's employment, summary judgment is inappropriate on plaintiff's Title VII hostile-work-environment claim.

## B. Defendants Are Entitled To Summary Judgment On Plaintiff's Unlawful-Termination Claim Under Title VII.

The DOE and NYCSSS are entitled to summary judgment on plaintiff's claim that they violated Title VII by terminating his employment based on his race, national origin, or religion, or in retaliation for his opposition to unlawful employment practices.  There is no dispute that plaintiff's unlawful-termination claim was exhausted through a timely administrative charge. SDHR Compl. 2.  But plaintiff has not adduced evidence from which a reasonable factfinder could find in his favor on this claim.

16

Claims for unlawful termination under Title VII are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008). Under this framework, a plaintiff claiming he was terminated for a discriminatory reason "must first establish a *prima facie* case of discrimination . . . [by showing] that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491–92 (2d Cir. 2010) (citation omitted). To establish a *prima facie* case of retaliatory termination, "a plaintiff must show (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Holava-Brown v. Gen. Elec. Co.*, 189 F.3d 461 (2d Cir. 1999) (citation and quotation marks omitted).

Once a plaintiff meets his *prima facie* burden, "the burden then shifts to the defendant to offer a legitimate nondiscriminatory reason for the termination." *Ruiz*, 609 F.3d at 491. If the defendant does so, at the final stage of the analysis, the plaintiff must offer admissible evidence that would "permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination," *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (citation omitted), or that retaliation "was a 'substantial' or 'motivating' factor behind the termination," *Louis v. Brooklyn Botanic Garden*, No. 10-CV-5406 JG LB, 2011 WL 3857127, at *9 (E.D.N.Y. Sept. 1, 2011) (quoting *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001)), *aff'd*, 487 F. App'x 603 (2d Cir. 2012).

Assuming that plaintiff has established a *prima facie* case, *see, e.g.*, *Richardson v. Comm'n on Hum. Rts. & Opportunities*, 532 F.3d 114, 125 (2d Cir. 2008), plaintiff's claims fail as a matter

17

of law because he does not offer sufficient evidence showing that his employment was terminated, even in part, based on a forbidden rationale.  Defendants' evidence that plaintiff was fired because he threw a pear at a student is exceptionally strong.  There is no dispute that plaintiff threw a pear in the general direction of students, in an incident caught on video.  School officials fired plaintiff that very day—"within an hour and a half," according to plaintiff, Pl.'s Reply in Opp'n to Defs.' Mot. for Summ. J. 19 ("Pl.'s Mem. in Opp'n") (Dkt. #76-3)—citing his pear throwing, Termination Letter 1.

Plaintiff's evidence of discriminatory or retaliatory motive, in contrast, is exceptionally weak, and defendants are therefore entitled to summary judgment.  *See Mendez-Nouel v. Gucci Am., Inc.,* 542 F. App'x 12, 13–14 (2d Cir. 2013); *see also Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 148 (2000); *Zacharowicz v. Nassau Health Care Corp.*, 177 F. App'x 152, 155 (2d Cir. 2006).  Plaintiff's evidence primarily consists of alleged inconsistencies in the precise description of the pear-throwing incident as internally reported by defendants, and he suggests that DOE and school officials should have interviewed more students when investigating.  Pl.'s Mem. in Opp'n 14–15, 18–20.  But there is no dispute that plaintiff threw a pear in the general direction of students, and the modest discrepancies in witness accounts and internal reports regarding that incident do not suggest any discriminatory motivation on the part of defendants.

Plaintiff also points to alleged past discriminatory statements of Paul and Martinez.  *Ibid*.  But these statements, made by two individuals who were *not* involved in the decision to fire plaintiff, *see* Pl.'s Reply in Opp'n to Defs.' Mot. for Summ. J. Ex. 56 3 (Dkt. #76-59), cannot keep his unlawful-termination claim alive.  As to Paul, in determining the probative value of a supervisor's past remarks to demonstrate pretext, courts in this circuit consider: "(1) who made the remark . . .; (2) when the remark was made in relation to the employment decision at issue; (3)

18

the content of the remark . . .; and (4) the context in which the remark was made." *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010). "[T]he more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination," while the "more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be." *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007) (collecting cases), *abrogated on other grounds by Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 177–78 (2009).

Paul's alleged comments do not generate a material dispute of fact as to pretext under these standards. Plaintiff alleges that at some time in 2014, Paul "expressed his intention to get rid of Plaintiff and had threaten[ed] to do so." Pl.'s Mem. in Opp'n 15; Rule 56.1 Supp. ¶ 38. He also alleges that Paul had previously made remarks disparaging his religion. But these remarks occurred years before the termination decision, Sylla Depo. at 113–14, 118–20; Rule 56.1 Supp. ¶ 18, and were made by an individual—Paul—who was on pre-retirement vacation at the time of the pear-throwing incident and was not involved in the decision to terminate plaintiff, Paul Depo. 58–60; Rule 56.1 Supp. ¶ 57. These remarks "by someone other than the person who made the decision adversely affecting the plaintiff . . . have little tendency to show that the decision-maker was motivated by [] discriminatory sentiment." *Tommasi*, 478 F.3d at 115. Similarly, while the alleged use of a racial slur by plaintiff's co-worker, Martinez, may support a hostile-work-environment claim, it does not generate a genuine dispute of fact about the reason for plaintiff's termination—a decision in which there is no allegation that Martinez, a DOE handyman, played any role.

Plaintiff has likewise failed to establish a material dispute of fact about whether he was fired in retaliation for protected activity. Plaintiff offers no direct evidence supporting that claim.

Instead, plaintiff principally relies on chain of inferences.  He argues that other employment-related decisions, like a reduction in compensation in 2011 after his nine-month immigration detention and a disciplinary warning from Paul in 2015 based on insubordination, occurred close in time to protected activity; that this temporal proximity suggests *those* employment decisions were retaliatory; and that therefore it stands to reason that *this* employment decision, his termination, was also retaliatory because of the retaliatory nature of those prior employment decisions.  *See* Pl.'s Mem. in Opp'n 16–19.  To be sure, past acts of retaliation can be "background evidence in support of a timely claim" of retaliation.  *Bowen-Hooks*, 13 F. Supp. 3d at 205.  But the highly circumstantial evidence plaintiff has offered to suggest that these independent, past acts were retaliatory is too slender a reed to support an inference that defendants' well-supported non-retaliatory rationale for the separate, later decision to terminate plaintiff's employment—namely, that plaintiff threw a pear at a student—was actually a pretext for retaliation.  This conclusion is bolstered by the absence of evidence that the decisionmakers involved in the past, assertedly retaliatory actions and those involved in plaintiff's firing were the same.

Summary judgment is appropriate on plaintiff's unlawful-termination claim under Title VII.

### C.  Defendants Are Entitled To Summary Judgment On Plaintiff's Untimely Claims Of Retaliation And Religious Discrimination Under Title VII.

Defendants are entitled to summary judgment on plaintiff's remaining retaliation and religious-discrimination claims under Title VII because they are time-barred.

#### i.  Plaintiff's Retaliation Claims Are Time-Barred.

Plaintiff's claims of retaliation based on events other than his termination are time-barred. Plaintiff alleges that (i) his pay was cut and his hours were reduced after he filed the OEO complaint about Martinez; (ii) Paul issued plaintiff official warnings and temporarily changed

plaintiff's work responsibilities after he complained to the Union about Paul refusing his Hajj-related vacation request; and (iii) plaintiff was made to clean "unprecedented" amounts of graffiti—allegedly created by a colleague—the day after he filed another DOE OEO complaint against Paul. Pl.'s Mem. in Opp'n 16–18. But plaintiff has not alleged that any of these acts occurred within the 300 days before he filed his administrative charge.

Plaintiff cannot invoke the continuing violations doctrine to render these claims timely, on the theory that these challenged acts and plaintiff's termination were all part of "a continuing policy and practice of prohibited discrimination." *Lugo v. City of New York*, 518 F. App'x 28, 29 (2d Cir. 2013) (citation and quotation marks omitted). "[T]he continuing violation doctrine does not apply to discrete unlawful acts, even if the discrete acts were undertaken 'pursuant to a general policy that results in other discrete acts occurring within the limitations period.'" *Rivas v. New York State Lottery*, 745 F. App'x 192, 193 (2d Cir. 2018) (quoting *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 157 (2d Cir. 2012)). Here, plaintiff is alleging that a series of discrete retaliatory actions outside the statute of limitations (such as a pay cut, hours reduction, and changes to work responsibilities) was the product of the same retaliatory motives as plaintiff alleges produced his termination—another discrete act. This is not a permissible use of the continuing violations doctrine. Since the retaliatory acts—other than termination—alleged in plaintiff's suit occurred more than 300 days before his EEOC charge, they are time-barred.

### ii. Plaintiff's Religious Discrimination Claim Is Also Time-Barred.

Plaintiff likewise did not file a timely administrative charge regarding the acts that he alleges constitute religious discrimination in violation of Title VII. Plaintiff's religious-discrimination claim consists of allegations that (i) his supervisor Paul repeatedly commented that he "pray[ed] too much;" (ii) Paul required plaintiff to punch out when he took breaks for prayer but did not require his colleagues to punch out for non-religious breaks; (iii) Paul denied plaintiff

vacation time for a religious pilgrimage; and (iv) Paul improperly denied plaintiff a shift-change request for months before granting it. Pl.'s. Mem. in Opp'n 12–14.   But plaintiff does not allege that any of these acts occurred in the 300 days before he filed his administrative charge.   And "allegations of [religious] harassment are distinct from Plaintiff's claim of a hostile work environment based on race," based on "actions 'taken by different co-workers.'" *Berrie*, 2017 WL 2374363, at *10 (quoting *Maxton v. Underwriter Labs.*, Inc., 4 F. Supp. 3d 534, 544 (E.D.N.Y. 2014) (quotation marks omitted).   The continuing violations doctrine therefore cannot save plaintiff's religion-based allegations because they are not "part of the same actionable hostile work environment practice" as Martinez's alleged racial slur. *Ibid*.   Summary judgment is therefore appropriate on plaintiff's religious-discrimination claims under Title VII.

## II.        Sections 1981 and 1983: Defendants' Summary Judgment Motion Is Granted.

Section 1981 "protects the equal right of 'all persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (brackets omitted) (quoting 42 U.S.C. § 1981(a)).   Section 1983, which provides a right of action against state actors for the deprivation of rights secured by federal law, supplies the exclusive avenue for civil claims against state actors for Section 1981 violations. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733–34 (1989).   Here, plaintiff alleges under Section 1981, via Section 1983, that defendants engaged in racial discrimination through a hostile work environment, unlawful termination, and improper retaliation.   As explained below, defendants are entitled to summary judgment on these claims.

### A. Defendants Are Entitled To Summary Judgment On Plaintiff's Hostile-Work-Environment Claim Under Section 1981.

Defendants are entitled to summary judgment on plaintiff's claim under Section 1981 based on a hostile work environment.   Plaintiff has not met the requirements for establishing

liability on the part of state actors under Section 1983 for these claims.  He has not adduced evidence that would establish municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1970), as needed for a claim against the DOE and NYCSSS.  And no reasonable jury could find that principal Quintana and supervisor Paul were personally involved in the alleged hostile work environment, as necessary to sustain a claim against the individual defendants under Section 1983.

### i.  The DOE And NYCSSS Are Entitled to Summary Judgement.

Plaintiff has not set forth facts establishing the liability of the DOE or NYCSSS under *Monell*—the only viable theory for suing these entities.  Establishing a violation of Section 1981 requires showing "(1) that [the plaintiff] is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) that the discrimination concerned one or more of the activities enumerated in [Section] 1981," *Lauture v. Int'l Bus. Machines Corp.*, 216 F.3d 258, 261 (2d Cir. 2000), such as the making or enforcing of contracts, 42 U.S.C. 1981(a). But a municipal entity may only be held liable for a Section 1981 violation (via Section 1983) by if the statutory violation was a product of "an official policy or custom."  *Saeli v. Chautauqua Cnty.*, 36 F.4th 445, 460 (2d Cir. 2022) (citations omitted).

Plaintiff's Section 1983 claims against the DOE and NYCSSS run through *Monell*.  The DOE can be held liable under *Monell* because it is a municipal entity and therefore acts under the color of state law.  *See, e.g.*, *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020).  Insofar as the NYCSSS, a private corporation, can be held liable under Section 1983 because of its entwinement with the DOE, *see* Pl.'s Mem. in Opp'n 5–6 (making this argument), plaintiff must also satisfy *Monell* as to the NYCSSS, *see Rojas v. Alexander's Dept. Store, Inc.*, 924 F.2d 406, 408 (1990) ("Although *Monell* dealt with municipal employers, its rationale has been extended to private businesses" sued under Section 1983) (collecting cases).

23

Plaintiff has not established that the hostile work environment he alleges was the product of an official policy or custom of the DOE or NYCSSS. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To establish a "practice[] so persistent and widespread as to practically have the effect of law," a plaintiff may point to evidence of misconduct that was "sufficiently widespread and persistent to support a finding that [the acts] constituted a custom, policy, or usage of which supervisory authorities must have been aware." *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012). Meeting this standard requires that the misconduct of a harassing employee or employees must have been "so manifest as to imply the constructive acquiescence of senior policy-making officials," which, in turn, requires "sufficient instances of tolerant awareness by supervisors of abusive conduct to support an inference that they had a policy, custom, or usage of acquiescence in such abuse." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297–98 (2d Cir. 2020) (citation and quotation marks omitted).

Plaintiff has not put forward evidence from which a jury could conclude that the hostile work environment plaintiff allegedly experienced reflected a practice of illegal conduct so widespread as to practically have the force of law. Plaintiff has presented evidence of race-related harassment by a single co-worker—Martinez—that occurred during the times that the two employees worked together, over school vacation periods between 2009 and 2016. *See* pp. 14–16, *supra*. As explained, a jury could find that this conduct by Martinez created a hostile work environment. *See ibid.* But harassment of a single employee by a single co-worker—spread out over vacation periods over a period of eight years—is not by itself misconduct "widespread and

persistent" as to support a finding that policymaking officials must have known of and tolerated the conduct. *Cf. Jones*, 691 F.3d at 81.

Nor has plaintiff has not put forward evidence of "sufficient instances of tolerant awareness by supervisors of abusive conduct" to permit a factfinder to infer that the DOE or NYCSSS tacitly approved Martinez's abuse. *Lucente*, 980 F.3d at 297–98 (citation and quotation marks omitted). There is no dispute that plaintiff's former supervisor, Burke, did not report plaintiff's April 2010 complaint about Martinez using the slur "mono" to the DOE OEO or to take other corrective action. But there is also no dispute that when the OEO learned of that allegation, and of plaintiff's complaint to Burke, via a complaint directly from plaintiff the following month, it repudiated Burke's response, finding that Burke had been required report the complaint to the OEO, and that corrective action against Burke was warranted because of his failure to report it. 2010 DEO OEO Report 1–3. The OEO then undertook its own investigation of the underlying allegation, in which it interviewed plaintiff, Burke, Martinez, and the only potential witness plaintiff had identified (who denied having heard Martinez call plaintiff "mono"), and ultimately concluded that there was "insufficient evidence" to support plaintiff's claims. *Ibid.* Plaintiff does not suggest he made any further complaint to any supervisor about Martinez's conduct until approximately six years later, when he reported another use of the slur "mono" to his Union, which relayed the complaint to school officials. Rule 56.1 Supp. ¶ 14; Sylla Depo. 163–64; *see* Rule 56.1 Resp. ¶ 62. Those complaints prompted an immediate response, as Martinez apologized to plaintiff the next day, and plaintiff alleges no further abuse by Martinez. *See* Rule 56.1 Supp. ¶ 14; Sylla Depo. 163–64. No reasonable factfinder could find that DEO or NYCSSS senior policymaking officials displayed "tolerant awareness" of race-based harassment when the record, taken in the light most favorable to plaintiff, reflects that plaintiff's 2010 complaints led to a relatively fulsome investigation and

25

that plaintiff's sole additional complaint in 2016 led to an apology from the alleged perpetrator and cessation of the offending conduct. *Lucente*, 980 F.3d at 297–98 (citation and quotation marks omitted).

Consistent with that conclusion, the trio of cases plaintiff invokes permitting *Monell* claims to proceed to trial involved municipal employers that failed to investigate or take other action in response to harassment complaints—not municipalities that *did* investigate, or that took steps that prompted an apology and termination of the objectionable behavior. *See Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 63 (2d Cir. 2014) (genuine dispute of material fact regarding *Monell* liability when "many human resources personnel, including the director of human resources, were aware of [plaintiff's] complaints" of "severe" and "pervasive" harassment, and the director of human resources "chose not to investigate the harassment"); *Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 642 (S.D.N.Y. 2015) (same, when plaintiff made "several complaints" about "pervasive sexual harassments to co-workers" and to the Deputy Commissioner of Human Resources and Commissioner of Human Resources, over "several months," which led to no investigation); *Peguero-Miles v. City Univ. of New York*, No. 13-CV-1636 (AJN), 2014 WL 4804464, at *10 (S.D.N.Y. Sept. 25, 2014) (holding plaintiff sufficiently alleged *Monell* liability in part because "numerous complaints to senior officials . . . went unheeded").

Because plaintiff has not put forward evidence from which a factfinder could determine that the DOE or NYCSSS had a policy or custom of acquiescing in the creation of a hostile work environment based on race, summary judgment is granted to those defendants on plaintiff's hostile-work-environment claim under Sections 1981 and 1983.

### ii.  Defendants Quintana and Paul Are Entitled to Summary Judgement.

Principal Quintana and supervisor Paul are also entitled to summary judgment on plaintiff's claims against them under Section 1981, via Section 1983.  "An individual may be held liable

under §§ 1981 and 1983 only if that individual is 'personally involved in the alleged deprivation.'"

*Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) (quoting *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004)).  Personal involvement can be established by showing that

> (1) the defendant participated directly in the alleged constitutional [or statutory] violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which [unlawful] practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that [unlawful] acts were occurring.

*Back*, 365 F.3d at 127.

Plaintiff has not put forward evidence from which a jury could find that either Quintana or Paul was personally involved in racial discrimination through a hostile work environment in any of these ways.  Plaintiff identifies no evidence from which a reasonable jury could find that either defendant personally engaged in harassment based on race, created a policy or custom permitting such conduct, was aware of and tolerated Martinez's racial harassment, or otherwise acted with gross negligence in supervising Martinez.  Plaintiff has not contended that he reported Martinez's conduct to Quintana or Paul, or that those two individuals learned of events that would have put them on notice that Martinez was calling plaintiff "mono" or otherwise harassing plaintiff when they worked together over school vacations.  Indeed, plaintiff puts forward no evidence about Quintana's activities other than facts relating to Quintana's involvement in plaintiff's termination after plaintiff threw a pear towards students.  *See* Rule 56.1 Resp. ¶ 46.  And while plaintiff complains that Paul made disparaging remarks about his religious faith and treated Muslim employees unfairly, he does not suggest that Paul engaged in race-related mistreatment or that he complained to Paul about, or otherwise put Paul on notice of, Martinez's racial harassment.  Since

27

"Section 1981 proscribes racial discrimination, not religious discrimination," *Duncanson v. New York State Educ. Dep't*, No. 13-CV-6030 (CBA), 2015 WL 631374, at *6 (E.D.N.Y. Feb. 12, 2015) (citing *Runyon v. McCrary*, 427 U.S. 160, 167–68 (1976)), plaintiff's religion-based allegations regarding Paul do not suffice to establish a triable question of fact, either.

Accordingly, Quintana and Paul are entitled to summary judgment on plaintiff's Section 1981 and 1983 claims.

## B. Defendants Are Entitled To Summary Judgment On Plaintiff's Section 1981 Unlawful-Termination Claim.

All defendants are entitled to summary judgment on plaintiff's claim under Section 1981 for unlawful termination based either on plaintiff's race or on retaliation for plaintiff's protesting racial discrimination, for the same reasons that the DOE and NYCSSS are entitled to summary judgment on plaintiff's analogous unlawful-termination claim under Title VII. In general, "the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of [Section] 1981." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004); *Littlejohn*, 795 F.3d at 315 (same, as applied to retaliation claims).

As explained above, plaintiff has not put forward evidence from which a finder of fact could determine that the DOE or NYCSSS terminated plaintiff based on his race or in retaliation for any protected activity. *See* pp. 16–20, *supra*. This conclusion applies equally to defendants Quintana and Paul. Accordingly, the "factors justifying summary judgment dismissing [plaintiff's] Title VII claim against the municipal defendants for termination of his employment equally support the summary dismissal of his claims for termination brought under [Section] 1981." *Patterson*, 375 F.3d at 225; *Noble v. Career Educ. Corp.*, No. 07-CV-5832 (KMK), 2009 WL 2391864, at *11 (S.D.N.Y. Aug. 4, 2009), *aff'd*, 375 F. App'x 102 (2d Cir. 2010); *Woodard*

28

*v. Monticello Cent. Sch. Dist.*, No. 06-CV-13361 (KMK), 2008 WL 5062125, at *15 (S.D.N.Y. Dec. 1, 2008).

### C. Plaintiff's Remaining Retaliation Claims Are Time-Barred.

Any other claims under Sections 1981 and 1983 of retaliation in opposition to complaints regarding racial discrimination are time-barred.  A three-year limitations period generally applies to Section 1981 retaliation claims brought under Section 1983 in New York, *see Duplan v. City of New York*, 888 F.3d 612, 619 (2d Cir. 2018), but some courts have applied a four-year limitations period to a subset of Section 1981 claims, *see Gilbert v. Dep't of Corr.*, No. 3:10-CV-1877 (JBA), 2014 WL 6471415, at *5 (D. Conn. Nov. 18, 2014) (applying a four-year statute of limitations to a Section 1981 contract-based discrimination claim brought under Section 1983); *Ginx Inc. v. Soho Alliance,* 720 F. Supp. 2d 342, 356 (S.D.N.Y. 2010) ("The longest possible limitations period applicable to actions commenced under 42 U.S.C. § 1981 is four years."); *see also Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 375 (2004) (applying four-year statute of limitations to claims under Section 1981 as amended by the Civil Rights Act of 1991).  Under either standard, plaintiff's claims of race-linked retaliation under those provisions are time-barred.

As in the Title VII context, claims based on discrete discriminatory acts—like cuts to compensation or hours—must be brought within four years of the event in question; the "continuing violations doctrine" cannot save claims brought based on discrete discriminatory acts outside the limitations period.  *Gittens v. Winthrop Hospitalist Assocs., P.C.*, No. 19-CV-5070 (LDH) (LB), 2022 WL 504490, at *2 (E.D.N.Y. Feb. 18, 2022) (collecting cases).  Here, plaintiff alleges various actions outside the limitations period constituted retaliation for his protesting racial discrimination—like a cut to his compensation and hours that plaintiff alleges occurred soon after his complaint to Burke regarding Martinez's conduct in 2010.  Pl.'s Mem. in Opp'n 17.  But he has not put forward evidence from which a factfinder could find acts of retaliation for plaintiff's

29

protesting racial discrimination in the four years before he filed his complaint on November 8, 2018—with the exception of plaintiff's discrete allegations of retaliatory termination discussed above.  Accordingly, plaintiff's claims of retaliation under Section 1981 stemming from acts other than plaintiff's termination is time barred.

## CONCLUSION

Defendants' motion for summary judgment is denied as to plaintiff's Title VII claim of a hostile work environment connected to his race and national origin against the DOE and NYCSSS. The motion is granted as to plaintiff's remaining Title VII claims and his claims under Section 1981, via Section 1983, and those claims are dismissed with prejudice.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: March 28, 2023
        Brooklyn, New York